# 17-10676-AA

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

——————————————

### JOHN FINNEGAN & JOAN FINNEGAN,

Petitioners-Appellants

v.

### COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

——————————————

## ON APPEAL FROM THE DECISION OF
## THE UNITED STATES TAX COURT

——————————————

## BRIEF FOR THE APPELLEE

——————————————

RICHARD E. ZUCKERMAN
  *Principal Deputy Assistant Attorney General*

TRAVIS A. GREAVES
  *Deputy Assistant Attorney General*

GILBERT S. ROTHENBERG    (202) 514-3361
MICHAEL J. HAUNGS    (202) 514-4343
ANDREW M. WEINER    (202) 305-2701
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

16355384.1

*Finnegan v. Commissioner* **(11th Cir. – No. 17-10676-AA)**

**C-1 of 2**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and

Eleventh Circuit Rule 26.1-1, counsel for the [party] hereby certify that,

to the best of their knowledge, information, and belief, the following

persons and entities have an interest in the outcome of this appeal:

Frank Agostino, Agostino & Associates

Michael J. DeMatos, Chief Counsel's Office, Internal Revenue Service

Joan Finnegan, Petitioner-Appellant

John Finnegan, Petitioner-Appellant

Rose E. Gole, Chief Counsel's Office, Internal Revenue Service

Michael J. Haungs, Appellate Section, Tax Division, United States

   Department of Justice

William M. Paul, Acting Chief Counsel, Internal Revenue Service

Gilbert S. Rothenberg, Chief, Appellate Section, Tax Division, United

   States Department of Justice

Lawrence A. Sannicandro, McCarter & English, LLP

Jared J. Scharf, Law Office of Jared J. Scharf

Valerie Vlasenko, Agostino & Associates

16355384.1

*Finnegan v. Commissioner* **(11th Cir. – No. 17-10676-AA)**

## C-2 of 2

Andrew M. Weiner, Appellate Section, Tax Division, United States

  Department of Justice

The Honorable Thomas B. Wells, Judge, United States Tax Court

Gennady Zilberman, Chief Counsel's Office, Internal Revenue Service

16355384.1

-i-

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 11th Cir. R. 28-1(c) and Fed. R. App. P. 34(a), counsel for the Commissioner respectfully inform this Court that they believe that oral argument may be helpful in this case because the primary issue on the merits holds significant importance for the administration of the tax laws.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and

Corporate Disclosure Statement ................................................ C-1

Statement regarding oral argument.........................................................i

Table of contents...............................................................................v

Table of authorities .........................................................................v

Statement of jurisdiction..........................................................xix

Statement of the issues .....................................................................1

Statement of the case .....................................................................2

    A.    Course of proceedings and disposition in the court

        below ..................................................................................2

    B.    Statement of the facts............................................................5

        1.    Taxpayers hire Duane Howell to prepare their tax

            returns..................................................................5

        2.    The tax returns prepared by Howell.............................6

        3.    Howell's indictment and guilty plea .............................9

        4.    The Tax Court proceedings .........................................12

    C.    Statement of the standard or scope of review.......................14

16355384.1

**Page**

Summary of argument ........................................................... 15

Argument ............................................................................. 18

    I.    Taxpayers waived any argument that the fraud
    exception under I.R.C. § 6501(c)(1) requires fraud by
    the taxpayer himself .............................................. 18

    II.    The Tax Court was correct in holding that the fraud
    exception under I.R.C. § 6501(c)(1) applies to
    taxpayers' fraudulent returns that Howell prepared
    with the intent to evade tax .................................... 29

        A.    The fraud exception does not require fraud by the
        taxpayer ........................................................ 30

            1.    The plain language of the statute imposes
            no such requirement, and doing so would
            undermine its purpose ...................................... 30

            2.    Courts have long interpreted the fraud
            exception in accordance with its plain
            language ....................................................... 35

16355384.1

**Page**

B.    Taxpayers' arguments that the fraud exception requires fraud by the taxpayer do not withstand scrutiny....................................................................40

1.    Taxpayers' tortured reading of the statute is demonstrably incorrect.......................................40

2.    Taxpayers' reliance on the original version of the fraud exception in the Revenue Act of 1918 is misplaced................................................41

3.    Taxpayers' reliance on other Code provisions is analytically dubious and unhelpful in any event.......................................45

4.    Taxpayers' remaining arguments, based on a taxpayer's non-delegable duty and the applicable presumption regarding taxing provisions, are frivolous .....................................53

III.    The Tax Court did not abuse its discretion by admitting evidence of Howell's fraudulent return practices and his statements against interest......................55

16355384.1

**Page**

A.   Evidence of Howell's routine of preparing fraudulent returns with the intent to evade tax support the inference that his preparation of taxpayers' returns was no different ............................ 55

B.   Howell was unavailable to testify and therefore his prior statements against interest were admissible ..... 58

Conclusion ............................................................................................. 64

Certificate of compliance ..................................................................... 65

Certificate of service ............................................................................ 66

16355384.1

## TABLE OF CITATIONS

**Cases:**                                                    **Page(s)**

*Access Now, Inc. v. Southwest Airlines Co.,*

    385 F.3d 1324 (11th Cir. 2004) ......................................26, 27

*\*Allen v. Commissioner,*

    128 T.C. 37 (2007) ........................................................ *passim*

*Ames-Mechelke v. Commissioner,*

    T.C. Memo. 2013-176, Tax Ct. Memo LEXIS 185

    (Aug. 1, 2013)........................................................................37

*Arkansas Public Employees Retirement System v. Harman*

    *International Industries, Inc.* (*In re Harman*

    *International Industries, Inc. Securities Litigation*),

    791 F.3d 90 (D.C. Cir. 2015) ...............................................25

*Arthur v. King,*

    500 F.3d 1335 (11th Cir. 2007) ....................................... 19, 22

*\*Badaracco v. Commissioner,*

    464 U.S. 386 (1984) .......................................31, 32, 33, 34, 51

* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Cases (cont'd):**                                                      **Page(s)**

*Ballard v. Commissioner,*

    740 F.2d 659 (8th Cir. 1984) .......................................34, 36, 51

*Bank of America, N.A. v. Mukamai (In re Egidi),*

    571 F.3d 1156 (11th Cir. 2009) ..............................................22

*BASR Partnership v. United States,*

    795 F.3d 1338 (Fed. Cir. 2015) .....................................*passim*

*Bates v. United States,*

    522 U.S. 23 (1997) ................................................................42

*Blue Kendall, LLC v. Miami Dade County Fla.,*

    816 F.3d 1343 (11th Cir. 2016) ..............................................28

*Bluebonnet Savings Bank, F.S.B. v. United States,*

    466 F.3d 1349 (Fed. Cir. 2006) .............................................19

*Browning v. Commissioner,*

    T.C. Memo. 2011-261, 2011 Tax Ct. Memo

    LEXIS 253 (Nov. 3, 2011) ..............................................37, 49

*Bufferd v. Commissioner,*

    506 U.S. 523 (1993) .............................................................31

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

## Cases (cont'd): Page(s)

*Cain v. Commissioner,*

460 F.2d 1243 (5th Cir. 1972) ............................................... 62

*Cavaliere v. Allstate Insurance Co.,*

996 F.2d 1111 (11th Cir. 1993) .............................................. 20

*CBS Inc. v. PrimeTime 24 Joint Venture,*

245 F.3d 1217 (11th Cir. 2001) .............................................. 42

\*City Wide Transit, Inc. v. Commissioner,*

709 F.3d 102 (2d Cir. 2013) .......................... 23, 34, 37, 38, 39

*Connecticut National Bank v. Germain,*

503 U.S. 249 (1992) ............................................................... 30

*Dean Witter Reynolds, Inc. v. Fernandez,*

741 F.2d 355 (11th Cir. 1984) .............................................. 27

*EEOC v. St. Joseph's Hospital, Inc.,*

842 F.3d 1333 (11th Cir. 2016) .............................................. 21

*Eghnayem v. Boston Scientific Corp.,*

873 F.3d 1304 (11th Cir. 2017) .............................................. 15

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Cases (cont'd):** **Page(s)**

*Eriksen v. Commissioner,*

T.C. Memo. 2012-194 Tax Ct. Memo LEXIS 194

(Jul. 12, 2012) ....................................................................37

*Erlenbaugh v. United States,*

409 U.S. 239 (1972) ............................................................46

*Etter v. Commissioner,*

T.C. Memo. 1991-43, 1991 Tax Ct. Memo

LEXIS 62 (Feb. 5, 1991) .....................................................19

*Fogerty v. Fantasy, Inc.,*

510 U.S. 517 (1994) ............................................................52

*Fry v. Commissioner,*

No. 91-70560, 1993 U.S. App. LEXIS 26407

(9th Cir. Oct. 4, 1993) ........................................................36

*Gould v. Gould,*

245 U.S. 151 (1917) ............................................................54

*Griffin v. Swim-Tech Corp.,*

722 F.2d 677 (11th Cir. 1984) ............................................20

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Cases (cont'd):**                                                          **Page(s)**

*In re Griffith,*

　　206 F.3d 1389 (11th Cir. 2000) .............................................. 42

*Gustafson v. Alloyd Co.,*

　　513 U.S. 561 (1995) ............................................................ 45

*Hamilton v. Secretary, Florida Department of Corrections,*

　　793 F.3d 1261 (11th Cir. 2015) ....................................... 19, 22

*Hertz Corp. v. Alamo Rent-A-Car,*

　　16 F.3d 1126 (11th Cir. 1994) .............................................. 20

*Hormel v. Helvering,*

　　312 U.S. 552 (1941) ............................................................ 27

*Jarecki v. G. D. Searle & Co.,*

　　367 U.S. 303 (1961) ............................................................ 45

*L.V. Castle Investment Group, Inc. v. Commissioner,*

　　465 F.3d 1243 (11th Cir. 2006) ............................................ 14

*Leathers v. United States,*

　　250 F.2d 159 (9th Cir. 1957) ............................................... 47

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Cases (cont'd):** **Page(s)**

*Leverette v. Louisville Ladder Co.,*

   183 F.3d 339 (5th Cir. 1999) (*per curiam*) ............................ 19

*Lincoln Gen. Ins. Co v. De La Luz Garcia,*

   501 F.3d 436 (5th Cir. 2007) .................................................. 19

*\*Lucia v. United States,*

   474 F.2d 565 (5th Cir. 1973) ................................. 31, 33, 35, 51

*Lyons v. Georgia-Pacific Corp. Salaried Employees*

   *Retirement Plan,*

   221 F.3d 1235 (11th Cir. 2000) .............................................. 46

*Mincey v. Head,*

   206 F.3d 1106 (11th Cir. 2000) ........................................ 15, 22

*Mohammadi v. Islamic Rep. of Iran,*

   947 F. Supp. 2d 48 (D.D.C. 2013) .......................................... 21

*Mungo v. Taylor,*

   355 F.3d 969 (7th Cir. 2004) .................................................. 19

*Nelson v. Adams USA, Inc.,*

   529 U.S. 460 (2000) .............................................................. 26

* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Cases (cont'd):**                                              **Page(s)**

*O'Neal v. Kennamer,*

    958 F.2d 1044 (11th Cir. 1992) .............................................. 20

*Parts & Electric Motors, Inc. v. Sterling Electric, Inc.,*

    866 F.2d 228 (7th Cir. 1988) ................................................. 23

*Rhone-Poulenc Surfactants & Specialties v. Commissioner,*

    114 T.C. 533 (2000) .............................................................. 43

*Richardson v. Commissioner,*

    509 F.3d 736 (6th Cir. 2007) ................................................. 36

*Roofing & Sheet Metal Services, Inc. v. La Quinta Motor*

    *Inns, Inc.,*

    689 F.2d 982 (11th Cir. 1982) .......................................... 27, 29

*Russello v. United States,*

    464 U.S. 16 (1983) ........................................................... 42, 46

*Tinkoff v. United States,*

    86 F.2d 868 (7th Cir. 1936) ................................................. 47

*United States v. Bisceglia,*

    420 U.S. 141 (1975) .............................................................. 32

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Cases (cont'd):**                                                    **Page(s)**

*United States v. Boyle,*

    469 U.S. 241 (1985) .......................................................53-54

*United States v. Garris,*

    616 F.2d 626 (2d Cir. 1980) ...................................................61

*United States v. Gonzales,*

    520 U.S. 1 (1997) ....................................................................43

*United States v. Gonzales,*

    559 F.2d 1271 (5th Cir. 1977)................................................61

*United States v. Gordon,*

    242 F.2d 122 (3d Cir. 1957) ...................................................47

*United States v. Langford,*

    647 F.3d 1309 (11th Cir. 2011).............................................57

*United States v. Lavabit, LLC (In re Under Seal)*

    749 F.3d 276 (4th Cir. 2014)................................................26

*United States v. Scopo,*

    861 F.2d 339 (2d Cir. 1988) ..................................................61

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

-xiv-

**Cases (cont'd):**                                                                        **Page(s)**

*Vanderberg v. Donaldson,*

    259 F.3d 1321 (11th Cir. 2001) ............................................... 20

*Vannaman v. Commissioner,*

    54 T.C. 1011 (1970) ............................................................... 36

*Wachovia Bank, N.A. v. Schmidt,*

    546 U.S. 303 (2006) ............................................................... 46

*Weinstein v. Commissioner,*

    33 B.T.A. 105 (1935) .............................................................. 36

*Williamson v, United States,*

    512 U.S. 594 (1994) ......................................................... 61, 62

*Wright v. Hanna Steel Corp.,*

    270 F.3d 1336 (11th Cir. 2001) ............................................... 28

*Yee v. City of Escondido,*

    503 U.S. 519 (1992) ............................................................... 25

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Statutes:**                                                                                 **Page(s)**

18 U.S.C.:

    § 2    .......................................................................................11

    § 371 .......................................................................................11

Internal Revenue Code of 1986 (26 U.S.C.):

    § 6110(a) ...............................................................................55

    § 6110(k)(3) ...........................................................................55

    § 6161(b)(3) .............................................................. 46, 47, 52

    § 6213(a) ...............................................................................xix

    § 6214....................................................................................xix

    § 6501(a) .............................................................. 4, 12, 30, 40

    § 6501(c)(1) ..................................................................... *passim*

    § 6501(c)(3) ............................................................................32

    § 6663........................................................... 43, 47, 49, 50, 51

    § 6663(a) .......................................................................... 46, 49

    § 6663(c)....................................................................... 46, 51, 52

    *§ 6664(c)(1).................................................................... 50, 51

    § 6672(a) ...............................................................................40

    § 7201....................................................................... 40, 47

    * Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Statutes (cont'd):**                                                    **Page(s)**

Internal Revenue Code of 1986 (26 U.S.C.) (cont'd):

    § 7212 ................................................................................... 11

    § 7442 ................................................................................. xix

    § 7454(a) ....................................................... 46, 47, 48, 49

    § 7482(a) ............................................................................ xix

    § 7482(a)(1) ........................................................................ 14

    § 7482(b) ........................................................................... xix

    § 7483 ................................................................................. xix

    § 7502 ................................................................................. xix

    § 7601 ................................................................................. 33

    § 7602 ................................................................................. 33

Revenue Act of 1918, Pub. L. No. 65-254, 40 Stat. 1057:

    § 250(b) ........................................................ 41, 42, 43, 44, 50

    § 250(d) ............................................................ 41, 42, 43, 44

    § 250(g) ............................................................................... 44

Revenue Act of 1921, Pub. L. No. 67-98, 42 Stat. 227:

    § 250(f) ............................................................................... 52

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Statutes (cont'd):** **Page(s)**

Revenue Act of 1928, Pub. L. No. 70-562, 45 Stat. 791:

§ 601 ....................................................................................48

**Miscellaneous:**

Adam S. Wallwork, "On the Use and Abuse of Legislative

History in the 'Preparer Fraud' Doctrine," 70 *Tax Law*.

403 (Fall 2016)...................................................................44

*Black's Law Dictionary* (6th ed. 1990)...........................................28

Board of Tax Appeals Rule 20,

reprinted in Notice III-30-1692, 1924 III-2 C.B. 425, 431....48

Federal Rule of Appellate Procedure:

Rule 13(a)(1)(A) .................................................................xix

Federal Rules of Civil Procedure:

Rule 59....................................................................................19

Rule 59(e).................................................................20, 21, 22

Rule 60....................................................................................19

Rule 60(b)...............................................................................20

Rule 60(b)(6) ..........................................................................20

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

**Miscellaneous (cont'd):** **Page(s)**

Federal Rules of Evidence:

    Rule 406 ................................................................................56

    Rule 804(b)(3) ...............................................................59, 61

Field Service Advice 200104006, 2000 FSA LEXIS 207

    (released Jan. 26, 2001) ......................................................55

Field Service Advice 200126019, 2001 FSA LEXIS 57

    (released June 29, 2001) ......................................................55

Senate Report No. 65-617,

    65th Cong., 3d Sess. (Dec. 6, 1918).........................................44

Senate Report No. 70-960,

    70th Cong., 1st Sess. (May 1, 1928) .....................................48

Tax Court Rules:

    Rule 142(b).........................................................................49

    Rule 161 ..............................................................................19

    Rule 162 ..........................................................................19, 20

\* Cases or authorities chiefly relied upon have asterisks.

16355384.1

## STATEMENT OF JURISDICTION

On February 7, 2013, the Internal Revenue Service ("IRS") issued notices of deficiency to taxpayers John and Joan Finnegan regarding their 1994 through 2001 tax years.  (Doc. 34, Ex. 1-R.)[1]  On March 19, 2013, within 90 days of the date of the notices, taxpayers filed a timely petition in the Tax Court to redetermine their tax deficiencies and penalties.  (Doc. 1); *see* Internal Revenue Code of 1986 (26 U.S.C.) ("I.R.C." or the "Code") §§ 6213(a), 7502.  The Tax Court had jurisdiction under I.R.C. §§ 6213(a), 6214, and 7442.

On November 17, 2016, the Tax Court entered a final decision disposing of all issues of all parties.  (Doc. 57.)  On February 8, 2017, within 90 days of the date of the decision, taxpayers filed a timely notice of appeal.  (Doc. 58); *see* I.R.C. § 7483; Fed. R. App. P. 13(a)(1)(A).  This Court has jurisdiction under I.R.C. § 7482(a), and is the proper venue under I.R.C. § 7482(b).

---

[1] "Doc." references are to documents entered into the record, as numbered by the Clerk of the Tax Court.  "Ex." references are to the exhibits to Doc. 34, the first stipulation of facts, unless otherwise indicated.  "Br." references are to appellants' opening brief.

16355384.1

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

## No. 17-10676-AA

## JOHN FINNEGAN & JOAN FINNEGAN,

### Petitioners-Appellants

### v.

## COMMISSIONER OF INTERNAL REVENUE,

### Respondent-Appellee

_____

## ON APPEAL FROM THE DECISION OF
## THE UNITED STATES TAX COURT

_____

## BRIEF FOR THE APPELLEE

_____

## STATEMENT OF THE ISSUES

1. Whether taxpayers waived their argument that the fraud exception to the statute of limitations for making assessment under I.R.C. § 6501(c)(1) requires fraud by the taxpayer himself, because taxpayers raised their argument only after the Tax Court entered its opinion against them, because the court declined to address their argument on a motion for reconsideration, and because taxpayers have

16355384.1

-2-

not demonstrated why this Court should address it for the first time on appeal.

2.  Whether the fraud exception under I.R.C. § 6501(c)(1), requiring "a false or fraudulent return with the intent to evade tax," applies where, as here, the taxpayer's return preparer, and not the taxpayer, possessed the requisite intent.

3.  Whether the Tax Court abused its discretion by admitting evidence of the fraudulent return practices of taxpayers' return preparer and the return preparer's statements against interest when he was unavailable to testify at trial in this case.

## STATEMENT OF THE CASE

### A.    Course of proceedings and disposition in the court below

In 1994, taxpayers John and Joan Finnegan lived in Monsey, New York, worked full-time and had income from a rental property they owned in Daytona Beach, Florida.  That year, they began using Duane Howell to prepare their tax returns.  Howell advised them to form a partnership to report their rental activity and to set up a Keogh self-employment retirement plan account.  For 1994 and subsequent tax years, Howell prepared returns for taxpayers, their partnership, and

16355384.1

another partnership they purportedly owned but knew nothing about, which were replete with unverified and false information designed to reduce their tax liability.  Taxpayers, for their part, simply signed the fraudulent returns and mailed them to different IRS service centers in addressed envelopes provided by Howell.  Ms. Finnegan noticed that their returns became thicker and that their refunds grew, but taxpayers never reviewed the contents of the returns.  The central issue on the merits in this case is whether the fraud exception under I.R.C. § 6501(c)(1) holds open the statute of limitations on making assessments against taxpayers when their returns were "false or fraudulent with the intent to evade tax" because of Howell, or whether taxpayers reap the benefit of Howell's fraud because their limitations periods expired.

Howell and his associates faced criminal charges and either pled guilty or were convicted.  In 2013, following the resolution of these criminal matters, the IRS issued a notice of deficiency to taxpayers for the years 1994 through 2001, asserting tax deficiencies of $32,697, $3,024, $7,940, $15,853, $18,641, $15,217, $16,720 and $13,909, respectively, and 20-percent accuracy-related penalties.  Taxpayers

-4-

challenged these determinations in the Tax Court, claiming that the general three-year statute of limitations under I.R.C. § 6501(a) barred assessments for the years in issue. Significantly, taxpayers acknowledged in the Tax Court that the fraud exception does not require fraud by the taxpayer, and that Howell's fraud would be sufficient, but they argued that the returns Howell prepared for them were not fraudulent. The Tax Court held a two-day trial to decide whether Howell prepared fraudulent returns for taxpayers with the intent to evade tax.

On June 16, 2016, the Tax Court (Judge Thomas B. Wells) entered its opinion, reported at T.C. Memo. 2016-118, concluding that taxpayers' returns were fraudulent, and therefore that the fraud exception allowed taxpayers' liabilities to be assessed at any time. Taxpayers moved for reconsideration, arguing – for the first time – that the fraud exception requires that the taxpayer, not the return preparer, intend to evade tax. The Tax Court denied taxpayers' motion on substantive and procedural grounds: the court was not convinced that the application of the fraud exception in this case constituted a manifest error of law, and the court concluded that taxpayers had ample

opportunity to raise their argument prior to the issuance of the court's opinion.

## B.    Statement of the facts

### 1.    Taxpayers hire Duane Howell to prepare their tax returns

From 1994 through 2001, taxpayers lived in Monsey, New York. (Doc. 47 at 7.)  Joan Finnegan worked full-time in admission and counseling for Rockland County Community College.  (Doc. 47 at 7; Doc. 38 at 144-45.)  John Finnegan was a plumber employed by contractors in New York City.  (Doc. 47 at 7; Doc. 39 at 233.)  In addition to taxpayers' wage income, they also owned an investment property in Daytona Beach, Florida, managed by Condo Rentals of Daytona.  (Doc. 47 at 7; Doc. 38 at 153-56.)

Taxpayers hired Duane Howell to prepare their tax return after their previous return preparer moved away.  (Doc. 47 at 8; Doc. 38 at 166.)   Howell recommended that they use a partnership to handle their rental income because then, he said (incorrectly), taxpayers would be entitled to make contributions to a Keogh self-employment retirement plan account.  (Doc. 47 at 8; Doc. 38 at 179.)  Taxpayers accordingly formed a partnership, Jomarjen Company ("Jomarjen"), but they did not

transfer ownership of the rental property to the partnership or otherwise change their dealings with the property manager or tenants. (Doc. 47 at 8; Doc. 38 at 167-69, 177.)  They also did not enter into a partnership agreement or ever write a check to Jomarjen, and Jomarjen never wrote a check to taxpayers.  (Doc. 47 at 8-9; Doc. 38 at 176-77, 215-16; Doc. 39 at 248-49.)  Condo Rentals of Daytona transferred rents directly to taxpayers and issued them a Form 1099, Miscellaneous Income, for each year in issue.  (Doc. 47 at 8; Doc. 38 at 154; Ex. 64-R.)

Taxpayers opened a Keogh account and made contributions, but they could not recall the amounts.  (Doc. 47 at 9; Doc. 38 at 180.) Howell instructed taxpayers by letter how much they should contribute, but taxpayers did not always follow those instructions and they did not check their returns to confirm that the contributions they reported were accurate.  (Doc. 47 at 9; Doc. 38 at 217-19.)

## 2.    The tax returns prepared by Howell

Howell or one of his associates prepared tax returns for taxpayers and related partnerships.  (Doc. 34 ¶¶ 20-22.)  Howell, however, never listed his own name or address as the paid preparer, and changed that information from year to year.  (Doc. 47, at 11.)  Taxpayers' returns

were supposedly prepared by "Jon Lea, Inc.," "Don Step, Inc.," "DPH Howco," and others.  (Ex. 2-J at 31; Ex. 4-J at 104; Ex. 7-J at 184.) Taxpayers' returns also incorrectly listed both of their occupations as "manager," and further reflected that taxpayers had their own "management," "professional services" or "administrative services" businesses reported on Schedule C, Profit and Loss from Business. (*E.g.,* Ex. 2-J at 31, 34; Ex. 4-J at 106; Ex. 8-J at 200-01.)  Taxpayers, however, did not operate any businesses during the years in issue. (Doc. 38 at 213-14; Doc. 39 at 237-47.)  Taxpayers' returns also claimed significant losses from Jomarjen.  (Doc. 47 at 10; *e.g.,* Ex. 2-J at 39.)

Mr. Finnegan signed Jomarjen's partnership returns, but taxpayers disavowed or could not recall most of what was reported on those returns.  For example, in 1994, Jomarjen reported a loss of $91,736, driven by a $75,000 guaranteed payment to the partners and assorted deductions, including $856 in "supplies" contributing to the costs of goods sold, $4,896 in "office supplies and expenses," and $312 in "miscellaneous" expenses.  (Ex. 10-J at 227-28, 233.)  The partnership return also reported that Mr. Finnegan made a capital contribution in the amount of $15,500.  (Ex. 10-J at 234.)  Taxpayers flatly denied the

16355384.1

guaranteed payment and could not vouch for any of the other items. (Doc. 38 at 160-64; Doc. 39 at 249-51.)  And they were equally unsure of Jomarjen's subsequent returns, containing many of the same items, occasionally in exactly the same amounts.  (Doc. 47 at 10; Doc. 39 at 251-61; *see, e.g.,* Ex. 12-J at 271 (reporting that Jomarjen had $4,896 in "office supplies and expenses," and $312 in "miscellaneous" expenses in 1996).)

In 1997, taxpayers started claiming losses from another partnership, Gannan Company ("Gannan"), in which they were purportedly the only partners, though they claimed never to have heard of the partnership until the IRS brought it to their attention.  (Doc. 47 at 9; Doc. 38 at 186-88; Doc. 39 at 261-70.)  Howell periodically changed the addresses of both partnerships to spread the returns around to different IRS service centers.  (Doc. 47 at 14; *e.g.,* Ex. 15-J at 297, Ex. 16-J at 307.)

In all, taxpayers claimed over $300,000 in losses from Jomarjen and Gannan.  (Doc. 47 at 11.)  Each year, Howell sent taxpayers their return and the partnership returns to sign and mail to the IRS, which they did without reviewing or checking the returns for accuracy.  (Doc.

16355384.1

47 at 12; Doc. 38 at 187-91; Doc. 39 at 280.)  Ms. Finnegan merely observed that their returns became very thick and that their refunds became larger.  (Doc. 47, at 9; Doc. 38 at 190-91.)

### 3.    Howell's indictment and guilty plea

The IRS Criminal Investigation Division opened an investigation of Howell and his associate, Glen Robins, concerning their preparation of fraudulent tax returns between 1992 and 2003.  (Doc. 47 at 15; Doc. 36 at 41.)  An informant offered a tip about Howell, who previously had been convicted of preparing false returns in the 1980s.  (Doc. 47 at 14-15; Doc. 36 at 42-43.)

Special Agents Steven Ashcroft and Robert Miranda headed up the investigation. (Doc. 47 at 15; Doc. 36 at 41.)  They determined that Howell and his associates prepared between 750 to 800 returns a year, including personal and partnership returns.  (Doc. 47 at 12; Doc. 36 at 51.)  They analyzed these returns, including those related to taxpayers, and identified common characteristics indicative of fraud: personal returns with net income of exactly $2 on Schedule C, Profit or Loss from Business, large partnership losses that flowed through to the individual returns, deductions for contributions to Keogh accounts, and

partnership expenses that would appear in the same order in the same amounts. (Doc. 47 at 15-16; Doc. 36 at 61-64, 71-72.) They also determined that Howell operated under several aliases and varied the addresses of both the preparer and the partnership, which made it more difficult for the IRS to pick up on these patterns. (Doc. 47 at 14; Doc. 36 at 48, 63, 71; *see also* Ex. 57-R at 926-27.)

Howell started with the information provided by the client, typically by way of a "tax organizer," and then used various means to reduce the client's tax. (Doc. 47 at 12; Doc. 37 at 110-11) For clients who had non-wage income, Howell reported that income on partnership returns, along with fabricated expenses, because he thought partnership returns were subject to less scrutiny. (Doc. 47 at 13; Doc. 37 at 115-16; Ex. 57-R at 901-04, 917-18.) Howell promoted Keogh accounts to these clients and subtracted the contributions from income without confirming that the contributions were actually made. (Doc. 47 at 13-14; Doc. 37 at 114, 125.) Howell also reported false guaranteed and other types of payments from partnerships to reflect that clients had self-employment income to contribute. (Doc. 47 at 14; Doc. 37 at 112, 116-17.)

-11-

Taxpayers' returns and those of Jomarjen and Gannan bore all of these hallmarks.  (Doc. 47 at 16; Doc. 36 at 64-68.)  But taxpayers were not asked to testify before the grand jury, and their returns were not featured in the resulting indictments.  (Doc. 47 at 16; Doc. 36 at 72-73.) Howell and Robins both pled guilty to conspiring to defraud the United States under 18 U.S.C. § 371, and Howell also pled guilty to interfering with the administration of the internal revenue laws under I.R.C. § 7212 and 18 U.S.C. § 2.  (Doc. 47 at 15; Doc. 34 ¶¶ 46, 47.)  Howell signed his plea agreement on March 14, 2007.  (Doc. 47 at 15; Doc. 34 ¶ 46.)

Thereafter, Howell appeared as a witness against another of his associates, Timothy Mitts, who was ultimately convicted for his role in preparing fraudulent returns.  Howell testified that "[e]ach and every [return he prepared] contains some fraudulent entries."  (Ex. 57 at 896.) Howell also signed an affidavit that he prepared or caused to be prepared false returns for taxpayers, Jomarjen, and Gannan for 1994 through 2001.  (Doc. 35, Ex. 63-R.)

16355384.1

-12-

### 4.    The Tax Court proceedings

On February 7, 2013, following the resolution of the criminal cases against Howell and his associates, the IRS issued a notice of deficiency to taxpayers for the years 1994 through 2001, disallowing the partnership losses claimed on their returns, net income from Mr. Finnegan's non-existent business, and deductions for Keogh account contributions, among other adjustments.  (Ex. 1-R at 1, 15-16.)  The IRS also imposed a 20-percent accuracy-related penalty in each year based on negligence, among other reasons.  (Ex. 1-R at 11.)

Taxpayers filed a petition in the Tax Court challenging the notice of deficiency solely on the ground that the general three-year statute of limitations for making assessments under I.R.C. § 6501(a) had expired for all of the years in issue.  (Doc. 1 at 2.)  The Commissioner responded that taxpayers' limitations periods were held open by the fraud exception to the statute of limitations under I.R.C. § 6501(c)(1), because Howell prepared "false or fraudulent return[s]" for taxpayers "with the intent to evade tax."  The Tax Court had previously held in *Allen v. Commissioner*, 128 T.C. 37, 42 (2007), that the fraud exception applies when the return preparer, not the taxpayer, intends to evade tax.

16355384.1

-13-

Taxpayers did not dispute the soundness of *Allen*, and so the lone issue before the Tax Court was "whether respondent has proved clearly and convincingly that petitioners' returns were prepared falsely or fraudulently with the intent to evade tax." (Doc. 47 at 2.) The Tax Court answered that question in affirmative and accordingly sustained the notice of deficiency.

At trial, the Commissioner called Special Agent Ashcroft, Robins, and taxpayers. In the opinion that followed, the Tax Court responded to taxpayers' objection that the testimony of Special Agent Ashcroft and Robins was irrelevant because they did not audit or prepare taxpayers' returns, explaining that their testimony was nonetheless relevant to show Howell's *modus operandi* of preparing fraudulent returns. (Doc. 47 at 3-4.) The Tax Court also overruled taxpayers' hearsay objection to Howell's testimony in Mitts's trial and his affidavit regarding taxpayers' returns, because both pieces of evidence were admissible under the exception for statements against interest when the declarant is unavailable. (Doc. 47 at 5-6.) Finally, the Tax Court concluded on the merits that the record was clear that Howell prepared fraudulent returns for taxpayers with the intent to evade tax. (Doc. 47 at 21-28.)

16355384.1

-14-

After the Tax Court issued its opinion, taxpayers moved for reconsideration, arguing for the first time that *Allen* was wrongly decided, and that the Federal Circuit in *BASR Partnership v. United States*, 795 F.3d 1338 (Fed. Cir. 2015), correctly interpreted the fraud exception to require fraud by the taxpayer. (Doc. 56 at 2.) The Tax Court, however, was unconvinced and stated that taxpayers raised their argument too late, especially considering that the Federal Circuit's opinion preceded the decision in this case by eleven months and that the Federal Circuit affirmed a 2013 opinion of the Court of Federal Claims reaching the same conclusion about the fraud exception. (Doc. 56 at 3.) The Tax Court thus denied taxpayers' motion. (Doc. 56 at 3.)

## C.    Statement of the standard or scope of review

This Court "review[s] Tax Court decisions 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.'" *L.V. Castle Inv. Group, Inc. v. Commissioner*, 465 F.3d 1243, 1245 (11th Cir. 2006) (quoting I.R.C. § 7482(a)(1)). In this case, taxpayers argue that the Tax Court misconstrued the fraud exception to the statute of limitation on making assessments under I.R.C. § 6501(c)(1) and improperly admitted evidence over taxpayers'

-15-

objections.  The Tax Court declined to address taxpayers' argument

regarding the fraud exception, which they raised for the first time in a

motion for reconsideration.  That determination is reviewed for abuse of

discretion.  *See Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000).

Evidentiary rulings are also reviewed for abuse of discretion.  *See*

*Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1316 (11th Cir. 2017).

## SUMMARY OF ARGUMENT

This case boils down to the principle that the fraud exception to

the statute of limitation on assessing tax lifts the limitations period in

the case of a fraudulent return, regardless whether it was the taxpayer

or the taxpayer's return preparer who intended to evade tax.  Taxpayers

hired Duane Howell to prepare their returns.  For 1994 through 2001,

Howell prepared fraudulent returns for taxpayers with the intent to

evade tax.  Howell eventually pled guilty to multiple criminal counts

related to his fraudulent practices.  By then, the general three-year

statute of limitations on making assessments against taxpayers had

run.  The IRS issued a notice of deficiency to taxpayers, relying on the

fraud exception in I.R.C. § 6501(c)(1), which permits assessment "at any

time" "in the case of a false or fraudulent return with the intent to

evade tax." Taxpayers responded in the Tax Court that their returns were not fraudulent, but they did not dispute that they underpaid their taxes or owed accuracy-related penalties on their underpayments, and further they did not dispute that their returns triggered the fraud exception if the returns were fraudulent, even though Howell, not taxpayers, intended to evade tax.

1. Taxpayers did not properly raise their argument below that the fraud exception requires fraud by the taxpayer, and offer no reason why this Court should address it. Following a trial and the Tax Court's adverse opinion, taxpayers filed a motion for reconsideration in which they argued, for the first time, that the fraud exception requires that the taxpayer personally intend to evade tax. The Tax Court denied taxpayers' motion, and taxpayers do not contend that the Tax Court abused its discretion in this regard. Nor could they credibly do so, as a motion for reconsideration is not an opportunity to raise a new argument after the court has ruled against the moving party. Indeed, at trial, the taxpayers agreed with Tax Court precedent that the fraud exception applies where the return preparer intended to evade tax. Finally, taxpayers' argument does not fit any of the circumstances

under which this Court has said that it may address an argument on appeal that was not raised below.

2.  Should the Court nevertheless decide to reach the merits, taxpayers' attempt to read into the fraud exception the requirement that the taxpayer personally intend to evade tax is flawed.  The statute, by its terms, does not impose such a requirement or even mention the word "taxpayer."  Rather, the exception is conditioned on the fraudulent nature of the *return*, without regard to *who* intended to evade tax, and taxpayers' argument for departing from the plain language contravenes the rule construing statutes of limitations strictly in favor of the Government.  Moreover, limiting the exception to fraud by the taxpayer would undermine its purpose to protect the public fisc in the case of a false or fraudulent return, which puts the IRS at a special disadvantage in detecting and investigating an underpayment of tax.  The disadvantage to the IRS is the same regardless of who intended to evade tax, and therefore the requisite intent is not confined to the taxpayer.  Taxpayers' circuitous arguments cannot get around these bedrock principles.

16355384.1

-18-

3. Finally, taxpayers are mistaken that the Tax Court abused its discretion by admitting evidence of Howell's pattern and practice of preparing fraudulent returns and his statements against interest when he was unavailable to testify. The evidence was relevant to the issue taxpayers tried – whether Howell prepared fraudulent returns for taxpayers with the intent to evade tax.

The Tax Court's decision is correct and should be affirmed.

## ARGUMENT

### I.

### TAXPAYERS WAIVED ANY ARGUMENT THAT THE FRAUD EXCEPTION UNDER I.R.C. § 6501(c)(1) REQUIRES FRAUD BY THE TAXPAYER HIMSELF

This Court should not reach the merits of taxpayers' argument that the fraud exception applies only when the taxpayer personally intends to evade tax, because taxpayers did not properly raise it below, because they have not challenged the Tax Court's refusal to address their argument that formed the basis of their motion for reconsideration, and because, until the court rejected their initial argument, they had agreed in the Tax Court that the fraud exception may apply based on a return preparer's fraud. Taxpayers accordingly have waived their argument several times over.

16355384.1

-19-

1.  Taxpayers waived their argument when they did not raise it until they filed their motion for reconsideration.  Motions for reconsideration filed in the Tax Court are governed by case law addressing motions for reconsideration filed in the district courts.  *See Etter v. Commissioner*, T.C. Memo. 1991-43, 1991 Tax Ct. Memo LEXIS 62, at \*4 (Feb. 5, 1991) ("[C]ases interpreting [Rules 59 and 60 of the Federal Rules of Civil Procedure] are precedents in regard to motions for reconsideration and motions to vacate decisions under Tax Court Rules 161 and 162.").  "'Generally speaking,'" courts of appeals "'will not consider an issue raised for the first time in a Motion for Reconsideration.'" *Lincoln Gen. Ins. Co v. De La Luz Garcia*, 501 F.3d 436, 442 (5th Cir. 2007) (quoting *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999) (*per curiam*)) (alteration omitted); *accord Bluebonnet Sav. Bank, F.S.B. v. United States*, 466 F.3d 1349, 1361 (Fed. Cir. 2006); *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004).  A motion for reconsideration "cannot be used to 'raise argument[s] or present evidence that could have been raised prior to the entry of judgment.'" *Hamilton v. Sec'y Dep't of Corr.*, 793 F.3d 1261, 1266-67 (11th Cir. 2015) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir.

16355384.1

2007)) (alteration by this Court) (applying Fed. R. Civ. Proc. 59(e)); *see*

*O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992) ("Denial of a

motion to amend is especially soundly exercised when the party has

failed to articulate any reason for the failure to raise the issue at an

earlier stage in the litigation.") (internal quotation marks and citation

omitted).[2] That is plainly what taxpayers in this case tried to do.

To the extent taxpayers believed that *BASR* changed the law, it

does not excuse their delay in raising their argument. As the Tax Court

---

[2] Taxpayers characterized their motion as a motion for relief from judgment for any "reason that justifies relief" under Rule 60(b)(6). (As noted in the text above, the Tax Court looks to precedent under Rule 60 as guideposts for determining whether to grant a motion for reconsideration under Tax Court Rules 161 and 162.) But their motion sought "reconsideration of substantive issues" resolved by the Tax Court and did not raise "exclusively collateral questions regarding what is due because of the judgment." *Hertz Corp. v. Alamo Rent-A-Car*, 16 F.3d 1126, 1131 (11th Cir. 1994) (internal quotation marks and citation omitted). Thus, their motion falls within the purview of Rule 59(e). Regardless, "[a] significantly higher standard is generally used to decide whether a movant is entitled to relief under Rule 60(b)." *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001) (internal quotation marks and citation omitted). Relief under Rule 60(b)(6) "'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'" *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)). There is no suggestion that taxpayers met this standard.

recognized (Doc. 56 at 3), the Federal Circuit decided *BASR* eleven

months before the Tax Court entered its opinion in this case, and it

affirmed the decision of the Court of Federal Claims, requiring

fraudulent intent by the taxpayer, that had been entered *years* earlier.

All the while, taxpayers did not question *Allen v. Commissioner*, 128

T.C. 37 (2007), or the applicability of the fraud exception in cases where

the return preparer causes a return to be false or fraudulent with the

intent to evade tax.[3]  Taxpayers instead focused on the argument that

the Commissioner could not show that their returns were fraudulent.

Taxpayers cannot avoid the consequences of their litigation strategy

after the Tax Court's opinion did not go their way.  *See EEOC v. St.*

*Joseph's Hosp., Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016) ("'A Rule 59(e)

motion is not a chance for a party to correct poor strategic choices, nor

are such motions to be used by litigants to cry over spilled milk.'")

(quoting *Mohammadi v. Islamic Rep. of Iran*, 947 F. Supp. 2d 48

---

[3] As the Tax Court noted, the Commissioner brought the decisions in *BASR* to the attention of the court and taxpayers.  The Commissioner cited the Court of Federal Claims's opinion in its post-trial brief and alerted the Tax Court when the Federal Circuit's opinion was issued.  (Doc. 56 at 3.)  Thus, there was no reasonable possibility that taxpayers overlooked the case.

16355384.1

(D.D.C. 2013)); *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (stating that the purpose of a Rule 59(e) motion "is not . . . to give the moving party another 'bite at the apple'") (citation omitted).

2. Taxpayers, moreover, do not challenge in their opening brief the Tax Court's denial of their motion for reconsideration. Thus, they have abandoned any argument that the Tax Court should have granted their motion for reconsideration notwithstanding that it raised a new issue. *See Bank of Am., N.A. v. Mukamai (In re Egidi)*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). In any event, there is no basis on which to question the Tax Court's denial of taxpayers' motion for reconsideration, a decision which "is committed to the sound discretion" of the Tax Court. *Mincey*, 206 F.3d at 1137 (citation omitted).

"A Rule 59(e) motion can be granted based only on 'newly-discovered evidence or manifest errors of law or fact.'" *Hamilton*, 793 F.3d at 1266 (quoting *Arthur*, 500 F.3d at 1343). The Tax Court rejected the claim that applying the fraud exception based on the return preparer's fraud, as the court did in *Allen*, constitutes a manifest error

16355384.1

of law.  (Doc. 56 at 2-3.)  It stated that *Allen* remains good law and has the support of numerous subsequent decisions, including *City Wide Transit, Inc. v. Commissioner*, 709 F.3d 102 (2d Cir. 2013).  (Doc. 56 at 2.)  Further, the Tax Court noted that Chief Judge Prost's dissent in *BASR* supports *Allen*, and, regardless, *BASR* is distinguishable on its facts.  (*Id.*)  A manifest error of law "must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish."  *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).  Taxpayers' argument that *Allen* was wrongly decided falls well short of this mark.

3.  Taxpayers also made it clear at the outset of the trial that they were *not* challenging the *Allen*'s holding that "the limitations period for assessment is extended under section 6501(c)(1) if the return is fraudulent, even though it was the preparer rather than the petitioner who had the intent to evade tax."  128 T.C. at 42.  Taxpayers accepted that interpretation of the fraud exception:

> MR. SCHARF [taxpayers' counsel]: . . .  We admit to the
> Allen case.  Right.  The Court has decided that.  But we're
> not saying that –

16355384.1

THE COURT:  So you're still objecting?

MR. SCHARF:  We're objecting – we're not conceding that Howell's fraud for his dozens of other clients was also perpetrated in the case of the Finnegans.

THE COURT:  So you do not admit that there was fraud on this return?

MR. SCHARF:  Correct.

THE COURT:  Even by Mr. Howell.

MR. SCHARF:  Correct.

THE COURT:  And I understand that the Court has decided that the fraud of a preparer is sufficient –

MR. SCHARF:  That's the law, unfortunately, yes.

THE COURT:  Do you contest that law?

MR. SCHARF:  No, Your Honor.

(Doc. 36 at 35.)  Taxpayers' post-opinion argument that the fraud exception applies only when the taxpayer himself intends to commit fraud is the exact opposite of what they maintained pre-opinion, that "the fraud of a preparer is sufficient."  Taxpayers' about-face demonstrates that taxpayers are not now arguing against the Tax Court's opinion; rather, they are advancing a new statute-of-limitations defense that the Tax Court never addressed.

16355384.1

In *Arkansas Public Employees Retirement System v. Harman International Industries, Inc.* (*In re Harman International Industries, Inc. Securities Litigation*), 791 F.3d 90 (D.C. Cir. 2015), the D.C. Circuit explained that "a party may refine and clarify its analysis in light of the district court's ruling, including citing additional support for his side of an issue *upon which the district court did rule*, much like citing a case for the first time on appeal." *Id.* at 100 (internal quotation marks and citations omitted) (emphasis added); *accord Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). But a party may not take a *contrary* position under the guise of refinement, as *In re Harman* illustrates. There, a pension fund tried to pivot from its argument in the district court, that the company did not identify forward-looking statements in satisfaction of a safe-harbor that applied to such statements, to arguing on appeal that the statements were not, in fact, forward-looking. The D.C. Circuit concluded that the pension fund forfeited its new argument, quoting the district court that the parties were "not in dispute as to whether any particular statement is forward-looking." *In re Harman*, 791 F.3d at 100. The situation here is the same and compels the same result.

16355384.1

The Tax Court did not address the legal issue whether the fraud exception requires that the taxpayer himself intend to evade tax, because taxpayers *agreed* that there is no such requirement.  The Tax Court stated that taxpayers "do not contend we should revisit *Allen*," and "[t]hus, *Allen* is controlling precedent in the instant case."  (Doc. 47 at 18 n.6.)  Taxpayers should not be permitted to argue against *Allen*'s interpretation of the fraud exception after telling the Tax Court that the issue was off the table.  *See United States v. Lavabit, LLC* (*In re Under Seal*) 749 F.3d 276, 288 (4th Cir. 2014) ("'The general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts . . . requires that the lower court be fairly put on notice as to the substance of the issue.'") (quoting *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000)) (alteration by the Fourth Circuit).

4.  Finally, this is not a case where this Court should reach an argument raised for the first time on appeal.  As the Court has explained, the general rule against considering such arguments is not jurisdictional, but a rule of practice subject to the Court's discretion.  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332 (11th

16355384.1

Cir. 2004); *see also Hormel v. Helvering*, 312 U.S. 552, 556-59 (1941).

The Court has identified five circumstances when it may be appropriate

to consider an argument raised for the first time on appeal: (1) where

the argument "involves a pure question of law, and if refusal to consider

it would result in a miscarriage of justice"; (2) "where the appellant

raises an objection to an order which he had no opportunity to raise at

the district court level"; (3) "where the interest of substantial justice is

at stake"; (4) "where the proper resolution is beyond any doubt"; and

(5) where the "issue presents significant questions of general impact or

of great public concern." *Access Now*, 385 F.3d at 1332 (quoting *Dean*

*Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360-61 (11th Cir.

1984)). The Court also balances "the needs of judicial economy," "the

desirability of having all parties present their claims in the court of first

instance," and "concern for avoiding prejudice to the parties." *Roofing*

*& Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982,

990 (11th Cir. 1982). These factors weigh heavily here.

Taxpayers have not articulated any reason why this Court should

consider their argument interpreting the fraud exception after they did

not properly raise it below. We address the first and the fifth

16355384.1

-28-

exceptions.  As to the first, this Court defines a "miscarriage of justice" as a "decision or outcome of a legal proceeding that is prejudicial or inconsistent with the substantial rights of a party." *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 n.8 (11th Cir. 2001) (quoting *Black's Law Dictionary*, 999 (6th ed. 1990)) (alterations omitted).  In this case, the issue of prejudice cuts against taxpayers in that their legal argument on appeal would subvert the result of the trial in the Tax Court on issues of taxpayers' choosing.  *See Blue Kendall, LLC v. Miami Dade County Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016) ("[W]e have been more likely to exercise discretionary jurisdiction over an issue not raised in the district court when . . . the appeal stems from a summary judgment ruling, not after trial.").  Taxpayers would undermine the judicial process by turning the trial into a waste of resources.  Moreover, taxpayers would compromise the Commissioner's ability to respond to their untimely argument by sidestepping the Tax Court's experienced perspective on the issue, and by charting an unavoidable detour through ancillary issues (including this one) on appeal.  In this manner, taxpayers mask a weak case as a miscarriage of justice.  *See id.* at 1350 (recognizing that one reason for finding the miscarriage-of-

16355384.1

justice element lacking is that the argument sought to be raised is "weak on its merits") (quoting *Roofing & Sheet Metal Servs.*, 689 F.2d at 990 n.11).

It is also farfetched to say that taxpayers' argument for narrowing the fraud exception raises a "significant question[ ] of general impact or of great public concern." The issue is significant to be sure, but not because of its general impact or public concern. The fraud exception is essential to protect the public fisc against fraudulent returns and to ensure that taxpayers who file fraudulent returns pay their fair share. It is more important that the issue be properly litigated and decided initially by a trial court than for this Court reach the issue in the case in order to give the public an immediate answer.

## II.

### THE TAX COURT WAS CORRECT IN HOLDING THAT THE FRAUD EXCEPTION UNDER I.R.C. § 6501(c)(1) APPLIES TO TAXPAYERS' FRAUDULENT RETURNS THAT HOWELL PREPARED WITH THE INTENT TO EVADE TAX

In any event, taxpayers' argument regarding the fraud exception lacks merit. The statute makes no reference to the taxpayer, let alone

-30-

require that the taxpayer intend to evade tax. Taxpayers' attempts to read that requirement into the statute are unavailing.

### A. The fraud exception does not require fraud by the taxpayer

#### 1. The plain language of the statute imposes no such requirement, and doing so would undermine its purpose

An exception to the "general rule" that "the amount of any tax imposed by this title [the Internal Revenue Code] shall be assessed within 3 years after the return was filed," I.R.C. § 6501(a), is the fraud exception under I.R.C. § 6501(c)(1). It provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed . . . at any time." I.R.C. § 6501(c)(1). This language is plain and unambiguous that the intent to evade tax is not confined to the taxpayer.

The "cardinal canon" of statutory interpretation is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," and "[w]hen the words of a statute are unambiguous, then, the first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). The fraud exception focuses entirely on the fraudulent

16355384.1

nature of *the return* – without regard to *who* intended the fraud. Accordingly, as Chief Judge Prost stated in her dissent in *BASR*, this Court "need proceed no further" than the plain text. 795 F.3d at 1358.

It would be particularly inappropriate to interpolate any qualification into the language of I.R.C. § 6501(c)(1), because "'limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.'" *Badaracco v. Commissioner*, 464 U.S. 386, 392 (1984) (quoting *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973) (*en banc*)); *see Bufferd v. Commissioner*, 506 U.S. 523, 527 n.6 (1993) (indicating that even where the statute of limitations for making assessments is arguably ambiguous, so long as "Commissioner's construction of the section is a reasonable one . . . [courts] should accept it absent convincing grounds for rejecting it"); *Lucia*, 474 F.2d at 570 ("In effect, a period of limitations runs against the collection of taxes only because the Government, through Congressional action, has consented to such a defense. Absent Government consent, no limitations defense exists.")

In *Badaracco*, the Supreme Court refused to limit the terms of the fraud exception, allowing the IRS to make an assessment "at any time,"

when a taxpayer files a fraudulent return and then subsequently files a non-fraudulent amended return: "The fact that a fraudulent filer subsequently submits an amended return does not make the case any less one of a false or fraudulent return," within the plain language of the statute. *Id.* at 401. It contrasted the fraud exception with the failure-to-file exception under I.R.C. § 6501(c)(3), that also allows the IRS to make an assessment "at any time," but "literally becomes inapplicable once a return has been filed." *Id.* It stated that in order for the filing of a non-fraudulent amended return to have the same effect of making the fraud exception inapplicable, "Congress must make it so in clear and unmistakable language." *Id.* By the same token, the fact that I.R.C. § 6501(c)(1) does not speak to *who* must intend to evade tax should be understood to impose no such restriction.

The plain language, moreover, is integral to the remedial purpose of the statute – to protect the public fisc against the loss of revenue caused by a false or fraudulent return. Our tax system relies on taxpayers' self-reporting and self-assessing the taxes they owe to the Government. *United States v. Bisceglia*, 420 U.S. 141, 145 (1975). The IRS polices the system through examinations and inspections. *Id.* at

145-46; *see* I.R.C. §§ 7601, 7602.  But even efforts to ensure compliance start with a taxpayer's good-faith disclosure of information and may be thwarted absent such disclosure, including when a taxpayer fails to file a return or files a false or fraudulent return.  *Lucia*, 474 F.2d at 570-71.  In *Lucia*, the former Fifth Circuit, sitting *en banc*, observed that Congress has responded to these situations in which the IRS lacks basic information by "consistently provid[ing] that time would not bar the collection of the tax," and further that '[t]he objective of this Congressional pattern . . . is essential to our national tax system."  *Id.* at 570.

The Supreme Court, too, has recognized that the fraud exception is "a rule that facilitates the Commissioner's collection of the tax due," and that "substantial policy considerations support its literal language." *Badaracco*, 464 U.S. at 398, 400.  The Supreme Court explained that the IRS is at a special disadvantage in detecting and investigating a false or fraudulent return.  A fraudulent return thwarts standard compliance efforts by disguising the underreporting of tax and omitting information necessary to determine the correct tax.  *Id.* at 398-99.  It also raises the specter that records sought in an investigation may be

16355384.1

-34-

falsified or destroyed. *Id.* Still further, "the Commissioner frequently is forced to place a civil audit in abeyance when a criminal prosecution is recommended." *Id.* at 399. The disadvantage is the same whether it was the taxpayer, or the taxpayer's return preparer, who intended the fraud, and accordingly the need for an unlimited period in which to make an assessment is also the same. *See Allen*, 128 T.C. at 40, 42 ("The Commissioner has just as much need for an extended limitations period to investigate and examine taxpayers who sign and allow to be filed returns that greatly overstate expenses or include fictitious expenses whether the fraud was committed by the taxpayer or the taxpayer's preparer."); *accord City Wide*, 709 F.3d at 107; *cf. Ballard v. Commissioner*, 740 F.2d 659, 663 (8th Cir. 1984) ("The lifting of the normal statute of limitations addressees the difficulties which sometimes arise in the discovery of deficiencies by virtue of taxpayer fraud; the source of the fraud does not alleviate such difficulties . . . ."). It therefore stands to reason that I.R.C. § 6501(c)(1) focuses on the return itself, rather than who is at fault.

Conditioning the application of the fraud exception on the taxpayer's own fraudulent intent not only would depart from the plain

16355384.1

language of I.R.C. § 6501(c)(1), but it also would add a dimension of blameworthiness that would defeat the purpose of the statute, and is entirely out of place. Indeed, the former Fifth Circuit held in *Lucia* that "the collection of legally owed taxes at any time, without regard to the three-year limitation period is not punishment" for Fifth Amendment purposes, considering that "the Government seeks only to deprive [the taxpayer] of tax and interest, both lawfully accrued." 474 F.2d at 572. At issue in that case was the failure-to-file exception, but the Court could have been addressing any exception to the statute of limitations, which operate to protect the Government, not to penalize the taxpayer. The taxpayer is no worse off than if he had simply paid his proper tax liability.

### 2. Courts have long interpreted the fraud exception in accordance with its plain language

Save for *BASR*, courts have consistently looked to the fraudulent nature of a return, not the source of the fraud, in applying the fraud exception, and even *BASR* is arguably distinguishable when the fraud is perpetrated by the return preparer. Before the proliferation of return preparers, fraudulent returns not owing to a taxpayer's fraud were typically the result of fraud by the taxpayer's spouse. In that context,

courts have long maintained that the fraud exception lifts the statute of

limitations on assessments against both spouses.  *See, e.g., Richardson*

*v. Commissioner*, 509 F.3d 736, 745 (6th Cir. 2007); *Fry v.*

*Commissioner*, No. 91-70560, 1993 U.S. App. LEXIS 26407, at *10-11

(9th Cir. Oct. 4, 1993) (unpublished); *Ballard*, 740 F.2d at 663;

*Vannaman v. Commissioner*, 54 T.C. 1011, 1018 (1970); *Weinstein v.*

*Commissioner*, 33 B.T.A. 105, 107 (1935).  In *Weinstein*, the predecessor

to the Tax Court explained that "[t]he provision for an unlimited period

of assessment is, by the terms of the statute, an impersonal provision

applying to the situation arising from a fraudulent return."  33 B.T.A.

at 107; *see Ballard*, 740 F.2d at 663 ("Section 6501(c)(1) lifts the

limitations bar 'in the case of a false or fraudulent *return* with the

intent to evade tax.'") (emphasis by the Eighth Circuit).  It was well

understood that the fraud exception is not confined to fraud by the

taxpayer.

In *Allen*, the Tax Court first addressed the exact issue in this case,

holding "that the limitations period for assessing petitioner's taxes is

extended if the taxes were understated due to fraud of the preparer."[4]

128 T.C. at 40.  In that case, a return preparer concocted deductions

that resulted in the taxpayer underpaying his taxes for two years.  The

Tax Court reiterated that "[t]he statute keys the extension to the

fraudulent nature of the return, not to the identity of the perpetrator of

the fraud."  *Id.* at 40.  The court added that the alternative, cramped

interpretation "would allow a taxpayer to receive the benefit of a

fraudulent return by hiding behind the preparer."  *Id.* at 42.  It also

denied that the result was unfair to the taxpayer, given that "[t]he

taxpayer, not the preparer, has the ultimate responsibility to file his or

her return and pay the tax due."  *Id.* at 41.

In *City Wide*, the Second Circuit addressed a variation on the facts

in *Allen* in which the return preparer cheated the IRS *and the taxpayer*

by filing fraudulent returns on behalf of the taxpayer as part of a

scheme to embezzle the tax payments.  The issue in that case was

---

[4] The Tax Court has since invoked *Allen* numerous times for this proposition.  *See, e.g., Ames-Mechelke v. Commissioner*, T.C. Memo. 2013-176, 2013 Tax Ct. Memo LEXIS 185, *15 (Aug. 1, 2013); *Eriksen v. Commissioner*, T.C. Memo. 2012-194, 2012 Tax Ct. Memo LEXIS 194, *19 (Jul. 12, 2012); *Browning v. Commissioner*, T.C. Memo. 2011-261, 2011 Tax Ct. Memo LEXIS 253, *44 & n.14 (Nov. 3, 2011).

-38-

whether the fraud exception allowed the IRS to assess the tax liabilities that the taxpayer had cut checks to pay, only to have those funds stolen by the return preparer. *City Wide*, 709 F.3d at 103. The Second Circuit adopted the Tax Court's interpretation of the fraud exception, quoting the holding in *Allen*, while reserving judgment as to whether factual differences between the two cases could compel a different result. *Id.* at 107 & n.3. The taxpayer had argued that the fraud exception was inapplicable under the circumstances because it "did not know of the preparer's defalcations," and "did not sign or knowingly allow to be filed a false return," but the taxpayers conceded these arguments on appeal. *Id.* at 107 n.3. Accordingly, the Second Circuit refrained from deciding "whether certain factual situations might arise that sever the tax *payer's* liability from the tax-*preparer's* wrongdoing." *Id.* (emphasis in original). Consistent with *Allen*, the Court held that the return preparer "intended to evade City Wide's taxes . . . thereby triggering the tolling provision under § 6501(c)(1)." *Id.* at 108-09.

In view of the case law that has developed around the fraud exception, *BASR* is an aberration. The majority in *BASR* disagreed with the Tax Court's statutory analysis in *Allen*, and disregarded the

16355384.1

Second Circuit's application of the fraud exception based on the return preparer's fraud in *City Wide*.  But unlike *Allen* and *City Wide*, the fraudulent returns in *BASR* were not due to a return preparer's fraud, but rather were attributable to the fraud of a tax shelter promotor who did not actually prepare the fraudulent returns.  While the majority concluded that the promoter bore too tenuous a connection to the fraudulent returns, it stated that "we need not decide whether the intent of some other third party – one more closely connected to the tax preparation and filings themselves – might be relevant."  *BASR*, 795 F.3d at 1342 n.3; *see also id.* at 1347 ("Even if we were to find the *Allen* court's reasoning persuasive, that decision would be distinguishable on the facts.").  Accordingly, *BASR* may be distinguished on the ground that it did not address the issue in *Allen*, *City Wide* and this case, namely, the effect of fraud by a return preparer.  In any event, the majority opinion is deeply flawed and should not be followed here, as we discuss below.

16355384.1

-40-

**B.    Taxpayers' arguments that the fraud exception requires fraud by the taxpayer do not withstand scrutiny**

**1.    Taxpayers' tortured reading of the statute is demonstrably incorrect**

Taxpayers contend that the phrase "intent to evade tax" in I.R.C. § 6501(c)(1) is informed by the context that "the tax" that may be assessed at any time in the case of a fraudulent return, and otherwise is subject to the general three-year limitations period on assessment under I.R.C. § 6501(a), is the taxpayer's tax.  (Br. 17-19.)  Taxpayers then reason that the requisite intent must be the taxpayer's own intent, not that of someone else.  But there is no support for that conclusion. At best, taxpayers seem to assume that only the taxpayer can intend evade the taxpayer's tax, which is wrong as a matter of law and fact.  As the Tax Court pointed out in *Allen*, return preparers who prepared fraudulent returns have been convicted of tax evasion under I.R.C. § 7201, though it was their clients' tax they evaded.  128 T.C. at 40 n.4. Along the same lines, employers may be subject to a penalty under I.R.C. § 6672(a) for evading the payroll taxes of their employees. Perhaps, most significantly, the Tax Court in this case found that Howell prepared fraudulent returns for taxpayers with the intent to

16355384.1

evade their taxes.  (Doc. 47 at 21, 27.)  That is all that the plain language of I.R.C. § 6501(c)(1) requires.

**2.    Taxpayers' reliance on the original version of the fraud exception in the Revenue Act of 1918 is misplaced**

The crux of taxpayers' argument, and a point of emphasis for the majority in *BASR*, 795 F.3d at 1344, 1348-49, is that the phrase "intent to evade tax" was identified with the taxpayer when Congress originally enacted the fraud exception in the Revenue Act of 1918, Pub. L. No. 65-254, 40 Stat. 1057, 1083, and that it has retained that legacy. According to taxpayers, the phrase "intent to evade tax," which appeared in the original version of the fraud exception to the statute of limitations in Section 250(d) of the Revenue Act of 1918, means the taxpayer's intent in light of the fact that the same phrase appeared in the fraud penalty provision under Section 250(b), which expressly required fraud by the taxpayer.  (Br. 19-21.)  But it was not the phrase (or any modifier of the phrase) "intent to evade tax" that limited the fraud penalty to fraud by the taxpayer himself; rather, it was the separate and express qualification that there "shall be no penalty" if "the return is made in good faith and the understatement of the amount

-42-

in the return is not due to any fault of the taxpayer." Revenue Act of 1918 § 250(b), 40 Stat. at 1083. The fraud exception in Section 250(d), in contrast, made no mention of the taxpayer. The most logical construction – then and now – is that the fraud exception means what it says, and the "intent to evade tax" is not limited to the taxpayer's intent.

"'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Bates v. United States*, 522 U.S. 23, 29-30 (1997) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Accordingly, "'where Congress knows how to say something but chooses not to, its silence is controlling.'" *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir. 2001) (quoting *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000) (*en banc*)). The juxtaposition of the fraud exception and the fraud penalty in Section 250 of the Revenue Act of 1918 shows that where Congress required that the taxpayer personally intend to evade tax, as with the fraud penalty in Section 250(b), it made that clear, referencing the taxpayer directly. By

16355384.1

omitting any such reference in Section 250(d), Congress indicated that the fraud exception was not conditioned on the taxpayer's intent. *Cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Given that Congress *explicitly* limited the scope of the phrase 'any crime of violence or drug trafficking crime' . . . no similar restriction modifies the phrase 'any other term of imprisonment,' which appears only two sentences later.") (emphasis in original).

The appearance of the phrase "with intent to evade tax" both in Section 250(b) and in Section 250(d) indicates that the required intent is the same for both purposes. *See Rhone-Poulenc Surfactants & Specialties v. Commissioner*, 114 T.C. 533, 548 (2000) ("The definition of fraud for purposes of section 6501(c)(1) is the same as the definition of fraud for purposes of section 6663 (which imposes a penalty for fraud)."). But in the absence of any reference to the taxpayer in Section 250(d), there is no textual support for the proposition that the taxpayer must possess the "intent to evade tax."

Taxpayers also turn their attention to legislative history (Br. 21), but that only further undermines their cause. Taxpayers quote the statement of the Senate Finance Committee regarding Section 250(g),

-44-

that "[a]uthority is given to the Commissioner to take summary proceedings for the collection of the tax in cases where there is evidence that the taxpayer designs to evade the tax by a sudden departure from the United States or by removal or concealment of his property (sec. 250g)." S. Rep. No. 65-617, 65th Cong., 3d Sess., at 10 (Dec. 6, 1918).[5] The statute itself required that "the Commissioner find that a taxpayer designs quickly to depart from the United States or remove his property therefrom . . . or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect . . . tax." Revenue Act of 1918 § 250(g), 40 Stat. at 1084. If taxpayers' argument had merit, Congress presumably would have omitted any reference to the taxpayer since the focus on the taxpayer's intent would have been clear from Section 250(b). The fact that Section 250(g) requires that the taxpayer in particular intend to evade tax underscores the point that Congress was explicit when imposing that requirement.

---

[5] Taxpayers miscite and mischaracterize this legislative history as "summarize[ing] section 250(d)" (Br. 21), having been led astray by Adam S. Wallwork, "On the Use and Abuse of Legislative History in the 'Preparer Fraud' Doctrine," 70 *Tax Law.* 403, 414-15 (Fall 2016) (Br. 21), which does the same.

-45-

### 3.    Taxpayers' reliance on other Code provisions is analytically dubious and unhelpful in any event

Further guided by *BASR*, taxpayers next argue that the phrase "intent to evade tax" in I.R.C. § 6501(c)(1) gathers meaning from other Code sections, but they cannot justify that approach, and it gets them nowhere anyway.

Invoking the doctrine of *noscitur a sociis*, that "a word is known by the company it keeps," (Br. 22 (quoting *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961)), taxpayers cull the Internal Revenue Code for sections that purportedly require fraud by the taxpayer, abandoning any semblance of proximity to, or association with, the fraud exception. The canon operates "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki*, 367 U.S. at 307). But the statutes cited by taxpayers, save for the fraud penalty, came into existence *after* the fraud exception. Thus, there were no possible inconsistencies to shed light on the language in question.

Taxpayers also insist that statutes requiring fraud by the taxpayer should be read *in pari materia* with the fraud exception,

16355384.1

notwithstanding that they bear no relation to the statute of limitations on making assessments. (Br. 22.) The canon, by its terms, requires that the statutes be of the same subject. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 316 (2006) ("[U]nder the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read 'as if they were one law.'") (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)). Thus, this canon, too, is misapplied by taxpayers.

At most, taxpayers' approach of interpreting the fraud exception through the lens of subsequent enactments informs what subsequent Congresses meant by the phrase "intent to evade tax." "[I]t is well settled," however, "that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Russello*, 464 U.S. at 26 (citations omitted); *see, e.g., Lyons v. Georgia-Pacific Corp. Salaried Empls. Ret. Plan*, 221 F.3d 1235, 1246-47 (11th Cir. 2000). Taxpayers state that the "fraud-related provisions of the Code, including sections 7454(a), 6663(a), 6663(c), and 6161(b)(3), all confirm that it is the taxpayer (not some third-party) who must have the requisite intent to indefinitely extend the period of limitations of

assessment under 6501(c)(1)." (Br. 22.) Leaving aside that the fraud exception preceded most of these statutes, taxpayers' position is untenable.

Taxpayers' reasoning, like that of the majority in *BASR*, 795 F.3d at 1344, rests on the false premise that *all* of the Code's other fraud-related provisions require fraud by the taxpayer. As discussed, I.R.C. § 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax . . . shall . . . be guilt of a felony," and that statute has long applied to persons other than the taxpayer owing the tax, *see, e.g., Leathers v. United States*, 250 F.2d 159, 160 (9th Cir. 1957); *United States v. Gordon*, 242 F.2d 122, 125 (3d Cir. 1957); *Tinkoff v. United States*, 86 F.2d 868, 876 (7th Cir. 1936). Taxpayers simply choose not to focus on the statutes that do not advance their cause. Moreover, they do not offer any credible reason why I.R.C. §§ 7454(a), 6663 and 6161(b)(3), in particular, inform who must possess the "intent to evade tax" for purposes of the fraud exception.

Taxpayers argue that "Section 6501(c)(1) should be read consistently with section 7454(a)," because taxpayers otherwise would have "the burden of disproving fraud any time the Government alleges

16355384.1

the fraud of a third-party suspends the period of limitations upon assessment." (Br. 23.)  That, however, is simply not true.  Originally enacted in 1928, ten years after the fraud exception, I.R.C. § 7454(a) provides that, in a Tax Court proceeding "involving the issue whether the petitioner [*i.e.,* the taxpayer] has been guilty of fraud with intent to evade tax . . . the burden of proof in respect of such issue shall be upon the Commissioner."  Revenue Act of 1928, Pub. L. No. 70-562, § 601, 45 Stat. 791, 872.  It was intended to address a specific concern with the then-newly created Board of Tax Appeals (the predecessor to the Tax Court):  The Board of Tax Appeals placed the burden of proof on the taxpayer, making no exception for a taxpayer's challenge to the administrative determination that he had committed tax fraud.  *See* B.T.A. Rule 20 ("Upon hearing of appeals the taxpayer shall open and close and the burden of proof shall be upon him."), *reprinted in* Notice III-30-1692, 1924 III-2 C.B. 425, 431.  Congress shifted the burden to the Commissioner to prove fraud by the taxpayer in recognition that "[p]roceedings before the board involving that issue in some respects resemble penal suits."  S. Rep. 70-960, 70th Cong., 1st Sess., at 38 (May

16355384.1

-49-

1, 1928).  Thus, taxpayers would be treated as innocent until proven guilty of fraud.

The same imperative does not apply to the fundamentally different question whether a taxpayer's limitations period remained open due to fraud by the taxpayer's return preparer.  The potential consequence for taxpayers is not punitive:  They can only be denied the benefit of the fraud, which was not an issue Congress sought to address in I.R.C. § 7454(a).  Moreover, the Tax Court has since put the burden on the Commissioner to prove any "issue of fraud with intent to evade tax," T.C. Rule 142(b), including that a return preparer's fraud held open the taxpayer's limitations period, *see, e.g., Browning v. Commissioner*, 2011 Tax Ct. Memo LEXIS 253, at *32.  Thus, the burden does not fall on taxpayers in any event.

Taxpayers next argue that I.R.C. § 6501(c)(1) should be read consistently with I.R.C. § 6663, which imposes a 75-percent penalty on "any underpayment of tax required to be shown on a return" that "is due to fraud."  Taxpayers state, somewhat disingenuously, that the penalty applies only on the basis of the taxpayer's fraud though "[s]ection 6663(a), like section 6501(c)(1), does not specify whether the

16355384.1

fraud . . . must be attributable to the taxpayer." (Br. 24.)  That ignores I.R.C. § 6664(c)(1), which provides that the § 6663 fraud penalty shall not be imposed if the taxpayer acted with reasonable cause and in good faith.  As discussed above, the original fraud penalty in Section 250(b) of the Revenue Act of 1918, like the fraud exception, required that a return be "false or fraudulent with intent to evade the tax," but with the notable exception that the fraud sufficient for imposing the fraud penalty must be "the fault of the taxpayer."  Congress has since recodified the fraud penalty under I.R.C. § 6663 and the exception to the penalty under I.R.C. § 6664(c)(1), but it is still clear that the fraud penalty requires fraud by the taxpayer.  The fraud exception, extending the limitations period in the case of a fraudulent return without regard as to who intended the fraud, has always stood in contrast to the fraud penalty in this regard, belying taxpayers' argument that the contours of the statutes are the same.

The distinct purpose of the fraud exception further bolsters this conclusion.  The fraud exception, as discussed, *supra* 32-35, is designed to protect the public fisc by ensuring that time will not bar the collection of tax when fraud renders a taxpayer's return unreliable.

*Lucia*, 474 F.2d at 570.  Together with I.R.C. §§ 6663 and 6664(c)(1), it reflects a basic feature of our tax system that a taxpayer who acts with reasonable cause and in good faith may avoid penalty liability otherwise triggered by an improper return, but a taxpayer may not avoid the underlying tax liability on the same basis.  Particularly in light of the rule that the terms of the fraud exception must be read strictly in the Government's favor, *Badaracco*, 464 U.S. 391-92, it is manifest that the "intent to evade tax" is not restricted to the taxpayer's intent, in accordance with the plain meaning of the exception.

Taxpayers also erroneously contend that applying the fraud exception based on the intent of someone other than the taxpayer would render I.R.C. § 6663(c) "meaningless."  (Br. 26.)  Section 6663(c) provides that the fraud penalty shall not apply to a spouse filing a joint return "unless some part of the underpayment is due to the fraud of such spouse."  It safeguards a non-fraudulent spouse from a fraud penalty even though that spouse's limitations period is held open by fraud of the other spouse.  *See Ballard*, 740 F.2d at 663 ("[Section 6501(c)(1)] does not require fraudulent intent on the part of both spouses who file a joint return, even though such a distinction is

-52-

explicitly recognized with regard to the assessment of additions to tax because of the fraud of one spouse."). Section 6663(c) is anything but meaningless under those circumstances.

Finally, taxpayers invoke I.R.C. § 6161(b)(3), (Br. 26-27), which is an exception to the general rule that the IRS may extend the time a taxpayer has to pay a tax deficiency. Originally enacted in the Revenue Act of 1921, Pub. L. No. 67-98, § 250(f), 42 Stat. 227, 266, I.R.C. § 6161(b)(3) prohibits the IRS from granting an extension of time to pay a deficiency due "to fraud with intent to evade tax." Taxpayers offer no support (and we have found none) that Congress meant the prohibition to cover only fraud by the taxpayer. Regardless, the mere appearance of the phrase "intent to evade tax" in I.R.C. § 6161(b)(3) is too thin a reed to sustain taxpayers' argument that the statute informs the meaning of the fraud exception. The distinct purpose of the fraud exception – to ensure that taxpayers who file fraudulent returns nonetheless pay their correct tax – indicates that Congress intended the fraud exception to apply broadly. Such contextual differences matter. *See, e.g., Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 522-25 (1994) (interpreting fee-shifting

16355384.1

provisions in separate statutes differently though they use virtually identical language).

### 4. Taxpayers' remaining arguments, based on a taxpayer's non-delegable duty and the applicable presumption regarding taxing provisions, are frivolous

a. The non-delegable duty of a taxpayer to file a return undercuts taxpayers' argument that they cannot be held responsible for the fraud of their return preparer. (Br. 27-29.) The Supreme Court explained in *United States v. Boyle*, 469 U.S. 241, 251 (1985), that "one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due," and that "[r]eliance by a lay person . . . cannot function as a substitute for compliance with an unambiguous statute." As the Tax Court recognized in *Allen*, it means that a taxpayer "cannot hide behind an agent's fraudulent preparation of his returns and escape paying tax if the Government is unable to investigate fully the fraud within the limitations period." 128 T.C. at 41. A taxpayer may hire whomever he chooses to prepare his taxes, but is not off the hook for paying the correct amount of tax where that choice unwittingly results in fraud. The fraud exception applies in that

instance, because at a basic level, the taxpayer bears the ultimate responsibility.  *Id.*

Taxpayers' suggestion that a taxpayer can only be held responsible for filing a fraudulent return perpetrated by an agent contradicts the essence of a duty that is *non-delegable.*  Whether their return preparer qualified as an agent is irrelevant.  Although the Tax Court in *Allen* and the Supreme Court in *Boyle* used the term "agent" to refer to a return preparer and attorney, respectively, neither did so in the formal sense or otherwise indicated that the duty to file a valid return ends at the involvement of someone who is not the taxpayer's agent.

b.  Taxpayers also argue that "'statutes levying taxes . . . are construed most strongly against the Government, and in favor of the citizen.'"  (Br. 29 (quoting *Gould v. Gould,* 245 U.S. 151, 153 (1917)).)  But the fraud exception levies no tax.  Taxpayers' reliance on this rule of construction, as opposed to the one covering statutes of limitations that bar the rights of the Government, is therefore misplaced.[6]

---

[6] The majority in *BASR* cited IRS Field Service Advice ("FSA") from 2001 that "the fraudulent intent of the return preparer is

## III.

### THE TAX COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING EVIDENCE OF HOWELL'S FRAUDULENT RETURN PRACTICES AND HIS STATEMENTS AGAINST INTEREST

**A.    Evidence of Howell's routine of preparing fraudulent returns with the intent to evade tax support the inference that his preparation of taxpayers' returns was no different**

Taxpayers argue that the Tax Court abused its discretion by

admitting evidence of Howell's *modus operandi*, not because it failed to

show a routine practice of preparing fraudulent returns, but rather

because it bore no relevance to the issue whether the fraud exception

held open taxpayers' limitations periods.  Their argument rests on the

premise that, contrary to *Allen*, a return preparer's fraud is not

---

*insufficient* to make section 6501(c)(1) applicable."  795 F.3d at 1348 (quoting FSA 200104006, 2000 FSA LEXIS 207, *12 (released Jan. 26, 2001)) (emphasis by the Federal Circuit).  Such advice is required to be made public, but is not vetted to the extent of a formal position and may not be cited as precedent.  I.R.C. § 6110(a), (k)(3).  It does not even constitute a final determination with respect to the taxpayer in issue.  FSA 200104006, 2000 FSA LEXIS 207, at *1.  Later the same year, the IRS issued advice regarding a return preparer's fraud under nearly identical circumstances and reached the opposite conclusion, that "the fraudulent intent of the taxpayer's agent provides a sufficient basis for applying section 6501(c)(1)."  FSA 200126019, 2001 FSA LEXIS 57, *2 (released June 29, 2001).  For all of these reasons, the attention the *BASR* majority paid to the earlier advice was not warranted.

16355384.1

sufficient to trigger the fraud exception: "Once the reasoning in *Allen* is rejected, evidence of Howell's habit is completely irrelevant." (Br. 32.) Their objection to the evidence of Howell's *modus operandi* thus falls with their argument misconstruing the fraud exception.

Taxpayers do not deny that the testimony of IRS Special Agent Ashcroft and Glen Robins, Howell's former associate, constituted "evidence of a person's habit or an organization's routine practice" that is admissible under Rule 406 of the Federal Rules of Evidence to "prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Special Agent Ashcroft recounted the IRS's criminal investigation of Howell and Robins, which uncovered a pattern of preparing returns that underreported income in a variety of ways designed to avoid detection, including using phony partnerships, made-up expenses and deductions, improper and inaccurate contributions to Keogh retirement accounts, different partnership addresses to spread those returns around the various IRS service centers, and different preparer names and addresses. (Doc. 36 at 45-64.) Special Agent Ashcroft further identified these elements of fraud on taxpayers' returns. (Doc. 36 at 64-72.) Robins provided a first-

hand account of Howell's return-preparation business and the pervasive use of these tactics.  (Doc. 37 at 111-20.)

This evidence was relevant, as the Tax Court explained, because "[w]hether Mr. Howell had a habit or routine when fraudulently preparing returns and whether petitioners' returns display elements of that habit or routine are facts of consequence making it more or less probable that Mr. Howell prepared petitioners' returns falsely or fraudulently with the intent to evade tax."  (Doc. 47 at 3-4.) Throughout the Tax Court proceedings, taxpayers agreed that the fraud exception held open their limitations periods if their returns were fraudulent due to Howell's intent to evade tax.[7]  Taxpayers cannot now credibly maintain that the Tax Court abused its discretion by admitting evidence of Howell's habitual fraud.  *Cf. United States v. Langford*, 647 F.3d 1309, 1325 n.11 (11th Cir. 2011) ("By failing to object to the admission of evidence on a particular ground, a defendant denies the trial court an opportunity to cure immediately any error created by the

---

[7] Taxpayers argued below that "Mr. Robins did not prepare petitioners' returns and Special Agent Ashcroft did not investigate petitioners' returns," and accordingly their testimony was not relevant. (Doc. 47 at 3.)  Taxpayers do not raise these arguments on appeal.

-58-

admission," and "we do not apply the usual abuse of discretion standard of review but rather review for plain error.") (internal quotation marks and citation omitted).  In any event, their argument is strictly a byproduct of their misconceived view that the fraud exception requires fraud by the taxpayer and does not otherwise dispute the relevance of evidence of Howell's fraudulent practices.

## B.    Howell was unavailable to testify and therefore his prior statements against interest were admissible

Taxpayers also argue that the Tax Court abused its discretion by admitting Howell's statements inculpating himself under the hearsay exception for statements against interest, because Howell's statements, according to taxpayers, were not against his interests in light of the plea agreement he signed before making them.  The Tax Court was well aware of Howell's plea agreement, and concluded that "Mr. Howell's statements expose him to criminal liability and civil liability from former clients."  (Doc. 47 at 6.)  Taxpayers' unsupported contention that Howell's cooperation "likely resulted in a more favorable resolution of his criminal matters" (Br. 35) says nothing about his increased exposure to civil claims.  Their argument therefore is without merit.

Rule 804(b)(3) provides a hearsay exception for statements against interest if, in relevant part, (1) the declarant is unavailable, (2) the statement "had so great a tendency . . . to expose the declarant to civil or criminal liability" that "a reasonable person in declarant's position would have made [it] only if the person believed it to be true," and (3) the statement "is supported by collaborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."  Howell could not be located to testify at trial in this case, but he previously testified in the criminal trial of Timothy Mitts about their conspiracy to prepare fraudulent returns, and he signed an affidavit stating that he prepared fraudulent returns specifically for taxpayers.  (Ex. 57-R; Doc. 35, Ex. 63-R.)  Howell's statements opened him up to criminal liability, as he was promised nothing in return for his testimony and could have withdrawn his plea:

> Q.  [Y]ou pled guilty to a felony in U.S. District Court in the White Plains, New York area.  Is that correct?
>
> A.  Yes, I did.
>
> Q.  As part of your plea agreement in that case, you were asked to cooperate and testify against Mr. Mitts?
>
> A.  Yes.

-60-

Q. What is your understanding of your plea agreement?

A. It may work in my favor when I am sentenced.

Q. All rights. Have you been promised anything in particular?

A. No.

Q. Do you have any expectations?

A. No. No expectations either.

Q. Have you been told anything about telling the truth?

A. Yes, I have. . . . That I had – must tell – be very truthful or the plea agreement will be cancelled. On top of it, I might even be charged with perjury.

(Ex. 57-R at 123-24; *see* Ex. 45-R.) The ramifications if Howell lied further support that he was telling the truth. Moreover, taxpayers do not dispute that Howell's statements increased his risk of civil liability, which independently qualifies them under the hearsay exception.[8] (Doc. 47 at 6.)

Given that Howell was promised nothing, taxpayers effectively argue that any self-inculpatory statement to authorities "'may well be motivated by a desire to curry favor with the authorities,'" and is

---

[8] Taxpayers' observation that Howell's statements did not expose him to tax liability (Br. 35) is beside the point.

16355384.1

therefore unreliable.  (Br. 35 (quoting Fed. R. Evid. 804(b)(3) advisory committee's notes).)  That paints with far too broad a brush.  *See, e.g., Williamson v, United States*, 512 U.S. 594, 604 (1994) ("Some of Harris' confession [to authorities] would clearly have been admissible under Rule 804(b)(3)") *United States v. Scopo*, 861 F.2d 339, 348-49 (2d Cir. 1988) ("Agro's plea and allocution were properly viewed as statements against his penal interest," because "[t]here is no evidence that he had entered into any understanding with the government or the court that he would not be sentenced for the crimes to which he allocated."); *United States v. Garris*, 616 F.2d 626, 632 (2d Cir. 1980) (finding that a statement made in custody to authorities satisfied Rule 804(b)(3)).

Taxpayers' reliance on case law is also unavailing.  Taxpayers equate Howell's statements to the grand jury to testimony that was held not against interest in *United States v. Gonzales*, 559 F.2d 1271, 1272-73 (5th Cir. 1977), in which the declarant had been granted immunity from prosecution and did not appear to be in any danger of civil liability.  (Br. 35.)  Accordingly, in that case, unlike in this one, the declarant was entirely off the hook.  Taxpayers also cite *Williamson* (Br. 36) for the proposition that a reasonable person in Howell's position

16355384.1

might think "'that implicating someone else [*i.e,* Mitts] would decrease
his practical exposure to criminal liability, at least so far as sentencing
goes,'" on the theory that "[s]mall fish in a big conspiracy often get
shorter sentences than people who are running the whole show."
*Williamson*, 512 U.S. at 604 (1994).  But Howell portrayed himself as
the big fish who schooled Mitts, just as a master would an apprentice:

> [H]e would take the information presented by the client and
> record it legally, the way it's supposed to be done.  Then
> when he would – after he would get it completed, as far as he
> was concerned, he would give it to me, and I would mark it
> up and I would tell him he overlooked things that we, as a
> creative firm, would include.

(Ex. 57-R at 128.)  Howell's testimony belies taxpayers' argument that
he sought to shift blame.

Finally, even if the Tax Court was wrong to admit Howell's
statements (which it was not), there was no shortage of competent
evidence to support the Tax Court's decision.  This Court therefore
should still affirm.  *See Cain v. Commissioner*, 460 F.2d 1243, 1244 (5th
Cir. 1972) ("In non-jury cases an appellate court will not reverse for the
erroneous reception of evidence unless there is an insufficiency of
competent evidence, or the trial court was induced by incompetent
evidence to make an essential finding it would not otherwise have

16355384.1

made."). As the Tax Court noted, Howell's statements were corroborated by the testimony of taxpayers, Special Agent Ashcroft and Robins, not to mention the record evidence, detailing how Howell perpetrated fraud on behalf of his clients, including taxpayers. (Doc. 47 at 6.)

16355384.1

## CONCLUSION

For the foregoing reasons, the decision of the Tax Court should be affirmed.

Respectfully submitted,

RICHARD E. ZUCKERMAN
  *Principal Deputy Assistant Attorney*
  *General*

TRAVIS A. GREAVES
  *Deputy Assistant Attorney General*

 /s/ Andrew M. Weiner

GILBERT S. ROTHENBERG       (202) 514-3361
MICHAEL J. HAUNGS           (202) 514-4343
ANDREW M. WEINER            (202) 305-2701
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  *Appellate.TaxCivil@usdoj.gov*
  *Andrew.M.Weiner@usdoj.gov*

MARCH 2018

16355384.1

-65-

## CERTIFICATE OF COMPLIANCE

### With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

Check the appropriate box in section 1, and check the box in section 2.

### 1.  Type-Volume

[X]    This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 12,972 words.

**or**

[ ]    This brief complies with the line limit of FRAP ____ because, excluding the parts of the brief exempted by FRAP 32(f) and ____, this brief uses a monospaced typeface and contains ____ lines of text.

### 2.  Typeface and Type-Style

[X]    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

(s)   _Andrew M. Weiner_

Attorney for _Commissioner of Internal Revenue_

Dated: _March 14, 2018_

16355384.1

-66-

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2018, this brief was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, and seven (7) paper copies were sent to the Clerk by First Class Mail. I further certify that service of the brief was made on counsel for the appellants by the CM/ECF system.


/s/ Andrew M. Weiner
Andrew M. Weiner
Attorney

16355384.1